**Charles T. SHERWIN, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 97–378C.**

United States Court of Federal Claims.

Jan. 13, 1999.

Charles T. Sherwin, Hope Mills, NC, pro se.

John J. Hoffman, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., attorney of record for defendant. Maura T. McGowan, Major, General Litigation Division, United States Air Force Legal Services Agency, of counsel.

**OPINION**

HORN, Judge.

The plaintiff, Charles Sherwin, was involuntarily discharged from the United States Air Force Reserve on December 1, 1989. In an application dated January 18, 1995, the plaintiff requested relief from the Air Force Board for Correction of Military Records (AFBCMR). On November 22, 1995, the AFBCMR denied relief, but the plaintiff indicates in pleadings that he did not receive a copy of the Board opinion until February 28, 1997. Plaintiff filed his complaint in this court on May 29, 1997. In response, the defendant filed a motion to dismiss based on the applicable six-year statute of limitations. The defendant's motion to dismiss is granted.

## FACTS

The plaintiff, Charles Sherwin, brought his complaint pro se.[1] Mr. Sherwin was a former member of the United States Air Force Reserve, attached to the 915th Civil Engineering Squadron, Pope Air Force Base, North Carolina as his terminal assignment. In July 1989, an administrative discharge board convened at Robins Air Force Base, Georgia, to consider allegations of unsatisfactory performance lodged against the plaintiff. At the conclusion of its deliberations, the board recommended that the plaintiff be discharged under honorable conditions. At the time the board convened, the plaintiff had over 15 years of service and had achieved the grade of Senior Master Sergeant. The Vice Commander of Headquarters Air Force Reserve, Major General Alan Sharp, approved the board's recommendation, thereby rendering the decision to discharge the plaintiff, effective December 1, 1989.

In an application dated January 18, 1995, the plaintiff sought relief from the Air Force Board for Correction of Military Records (AFBCMR), asking for reversal of the Air Force discharge decision. On November 22, 1995, the AFBCMR denied plaintiff relief.

On May 29, 1997, plaintiff filed his complaint in this court.

The plaintiff's complaint centers on alleged violations of Air Force regulations in his administrative discharge board proceeding. Plaintiff contends that the legal advisor to the board is required to be a field grade officer, but was a company grade officer at his board; that the recorder to the board is not to act as a prosecutor, but did so at his board; that documents were not provided to the plaintiff prior to his board, as required, resulting in a violation of due process; and that, over the objection of the plaintiff's appointed counsel, an Unfavorable Information File (UIF) containing adverse information was provided to the board, in violation of regulations. The plaintiff seeks reinstatement to the United States Air Force Reserve, back pay, promotion, retirement points, correction of his military records, and other relief as appropriate.

Defendant filed a motion to dismiss the plaintiff's complaint on October 14, 1997, contending that the complaint was filed more than seven and one-half years after plaintiff's discharge, beyond the six-year statute of limitations contained in 28 U.S.C. § 2501 (1994).

1. The administrative record submitted to the court contains an indication of prior litigation between the plaintiff and the Air Force: *Sherwin v. United States Air Force*, No. CA–90–34–3–CIV–BR (E.D.N.C. Apr. 15, 1992) (the complaint alleged violation of the Privacy Act, 5 U.S.C.A. § 552A (West 1977 & Supp.1993); defendant's motion for summary judgment granted), *aff'd*, 37 F.3d 1495 (4th Cir.1994) (table), *cert. denied*, *Sherwin v. Department of the Air Force*, 514 U.S. 1096, 115 S.Ct. 1823, 131 L.Ed.2d 745 (1995) (mem.). Mr. Sherwin was both a military reservist and a civilian employee (Air Reserve Technician, or "ART") at Pope Air Force Base, NC. He was discharged from the Air Force in his military capacity, which formed the basis for the instant complaint, and also was removed from his civilian position as an ART. *See Sherwin v. Widnall*, No. 93–68–CIV–3–BR, 1994 WL 914487 at *1 (E.D.N.C. Mar. 7, 1994). Other litigation between the plaintiff and the Air Force includes: *Sherwin v. Department of the Air Force*, 905 F.2d 1531 (4th Cir.1990) (table) (dismissing appeal of the denial of a temporary restraining order which would have prevented the Air Force from conducting a discharge hearing); *Sherwin v. Department of the Air Force*, 918 F.2d 187 (Fed.Cir. 1990) (table) (Mr. Sherwin's appeal of a Merit Systems Protection Board (MSPB) decision; MSPB decision affirmed); *Sherwin v. Billmyer*,

978 F.2d 1256 (4th Cir.1992) (table) (Mr. Sherwin brought a Bivens action [*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)]; summary judgment for defendant affirmed); *Sherwin v. Widnall*, No. 93–68–CIV–3–BR, 1994 WL 914487 (E.D.N.C. Mar. 7, 1994) (Mr. Sherwin claimed that inclusion of unemployment information in his MSPB hearing violated state law; defendant's motion to dismiss granted); *Sherwin v. United States*, No. 3:94–CV–48–BR2, 1994 WL 923191 (E.D.N.C. Oct. 26, 1994) (complaint dismissed with prejudice); *Sherwin v. United States*, 59 F.3d 167 (4th Cir. 1995) (table) (Mr. Sherwin's appeal denied); *Sherwin v. United States*, 62 F.3d 1415 (4th Cir. 1995) (table) (Mr. Sherwin's appeal denied); *Sherwin v. United States Air Force*, 62 F.3d 1415 (4th Cir.1995) (table) (Mr. Sherwin's motion to reconsider summary judgment for the defendant denied); *Sherwin v. Department of the Air Force*, 955 F.Supp. 140 (D.C.D.C.1997) (the complaint alleged that the Air Force failed to provide Mr. Sherwin pertinent documents, until after his removal from the Air Force as a civilian employee; motion to dismiss granted), *aff'd*, No. 97–5141, 1997 WL 634542 (D.C.Cir. Sept. 8, 1997). The plaintiff's claims in the instant case appear not to have been previously litigated. The defendant has not alleged otherwise.

The plaintiff responded, defendant replied, and the plaintiff provided a further response as well as a supplemental brief. For the reasons discussed more fully below, defendant's motion to dismiss is granted.

## DISCUSSION

The defendant has filed a motion to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction. When considering a motion to dismiss, the court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). The court is required to decide any disputed facts which are relevant to the issue of jurisdiction. *Id.*

The standard for weighing the evidence presented by the parties when evaluating a motion to dismiss for lack of jurisdiction, pursuant to RCFC 12(b)(1), and/or a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(4), has been articulated by the United States Supreme Court, as follows: "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989); *see also Alaska v. United States*, 32 Fed.Cl. 689, 695 (1995), *appeal dismissed*, 86 F.3d 1178 (Fed.Cir.1996). In rendering a decision, the court must presume that the undisputed factual allegations included in the complaint by a plaintiff are true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 746; *Alaska v. United States*, 32 Fed.Cl. at 695.

The burden of establishing jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alaska v. United States*, 32 Fed.Cl. at 695; *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. 399, 404 (1994). The court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). Nonetheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

In order for this court to have jurisdiction over plaintiff's complaint, the Tucker Act, as amended, 28 U.S.C.A. § 1491 (West 1994 & Supp.1998), requires that a substantive right, which is enforceable against the United States for money damages, must exist independent of 28 U.S.C. § 1491. The Tucker Act provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act merely confers jurisdiction on the United States Court of Federal Claims; it does not create a substantive right that is enforceable against the United States for money damages. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607, *reh'g denied*, 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *United States v. Testan*, 424 U.S. 392, 398–99, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

Moreover, a waiver of the traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) (citing *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). The individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity.

*United States v. Testan,* 424 U.S. at 398, 96 S.Ct. 948. "[I]n order for a claim against the United States founded on statute or regulation to be successful, the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *Cummings v. United States,* 17 Cl.Ct. 475, 479 (1989), *aff'd,* 904 F.2d 45 (Fed.Cir.1990) (citations omitted); *see also United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (citing *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948 (quoting *Eastport S. S. Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967))); *Duncan v. United States,* 229 Ct.Cl. 120, 138, 667 F.2d 36, 47 (1981), *cert. denied,* 463 U.S. 1228, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983).

■ As a threshold matter, pursuant to the money-mandating provisions of the Military Pay Act, 37 U.S.C. § 204 (1994 & Supp. II 1996), the United States Court of Federal Claims generally possesses jurisdiction when enlisted members are involuntarily separated prior to the end of their terms of enlistment and seek reinstatement and back pay. *See Sargisson v. United States,* 913 F.2d 918, 920 (Fed.Cir.1990), *reh'g denied; West v. United States,* 35 Fed.Cl. 226, 229–30 (1996); *Wyatt v. United States,* 23 Cl.Ct. 314, 318 (1991).

■ The record in the case at bar reflects that the plaintiff was discharged from the United States Air Force Reserve on December 1, 1989, and that approximately seven and one-half years elapsed before the plaintiff filed his complaint in this court on May 29, 1997. The six-year statute of limitations, 28 U.S.C. § 2501 (1994), governs military pay claims brought in this court.[2] The

statute of limitations time limit "is jurisdictional in nature and, as an express limitation on the waiver of sovereign immunity, may not be waived." *Hart v. United States,* 910 F.2d 815, 818–19 (Fed.Cir.1990); *see also Colon v. United States,* 35 Fed.Cl. 515, 517 (1996). Furthermore, a claim challenging an involuntary discharge from the military first accrues on the date the service member is discharged. *Hurick v. Lehman,* 782 F.2d 984, 986 (Fed.Cir.1986) (citing *Wilson v. United States,* 231 Ct.Cl. 958, 959 (1982)); *Cook v. United States,* 32 Fed.Cl. 783, 786 (1995), *recons. denied.*

In his brief submitted to this court, the plaintiff's premise, however, is that:

Resort to the Air Force Board for the Correction of Military Records is not *optional*—it is *mandatory,* or the case cannot be heard by this Court. Each-and-every administrative channel *must* be exhausted. This plaintiff petitioned the Air Force Board for the Correction of Military Records to correct the violations of the law and was refused relief. The "Board" refused to do its statutory duty, and this plaintiff was forced to file this action in this Court—within the "six-year" period *after* notification of final board action of the Air Force Board for Correction of Military Records, *Johnson [v. United States,* 208 Ct.Cl. 409, 527 F.2d 1209 (1975), *cert. denied,* 429 U.S. 889, 97 S.Ct. 245, 50 L.Ed.2d 171 (1976) ].

(Emphasis in original.)

In *Johnson v. United States,* the case on which plaintiff attempts to rely, an application for compensation was submitted to the National Aeronautics and Space Administration (NASA) Inventions and Contributions

---

**2.** Plaintiff attempts to assert jurisdiction in this court based on the Tucker Act, "and because there has been a 'taking' the claim is founded upon the U.S. Constitution, thus is within the jurisdiction of this Claims Court to hear and determine." A Fifth Amendment taking has not been further addressed by parties. In the event plaintiff intended to attempt to argue in the alternative that his military pay claim was somehow redressable under takings law, the court notes that the six-year statute of limitations applies equally to takings cases and to military pay cases, with the claim accruing when all of the events necessary to give rise to the government's

alleged liability have occurred. With respect to plaintiff's claim, the operative starting date for the running of the statute of limitations is December 1, 1989, the date of the plaintiff's involuntary discharge from the military. *See Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1376–77 (Fed.Cir.1998); *Seldovia Native Ass'n, Inc. v. United States,* 144 F.3d 769, 774 (Fed.Cir. 1998); *Argent v. United States,* 124 F.3d 1277, 1285 (Fed.Cir.1997). Thus, with the plaintiff's complaint filed over six years after the date of discharge, any takings theory of recovery also would be time-barred.

Board. The Board recommended rejection of the claim, the NASA Administrator adopted the recommendation, and the plaintiff in *Johnson* was notified of the administrative denial in October 1967. A complaint was filed in the United States Court of Claims in March 1974, outside the six-year statute of limitations. The court held that the plaintiff's claim was time-barred. *Johnson v. United States,* 208 Ct.Cl. at 411, 415, 527 F.2d 1209. The decision and language of *Johnson* do not assist the above-captioned plaintiff. First, *Johnson* sounds in the appropriation of proprietary data, rather than involuntary military separation, such that any portage of rules from one case to the other should be conducted with caution; second, the court in *Johnson* does not reach the issue of whether, in a case seeking relief for alleged appropriation of proprietary data, resort to the NASA Inventions and Contributions Board was mandatory prior to seeking judicial relief, *id.* at 412 n. 2, 413 n. 4, 527 F.2d 1209; and third, although the *Johnson* court found that the claim was time-barred because it was filed more than six years after the administrative denial, the court did not address whether the claim would have been time-barred if it had been filed six years after the allegedly offending act. In sum, the *Johnson* case did not articulate a rule that claimants are timely if their claims are filed within six years of an administrative denial.

■ In military pay cases, such as the one at bar, the rule in this court is settled. The United States Court of Appeals for the Federal Circuit, in response to a claimant who similarly argued that an application for relief before the Navy Correction Board tolled the six-year statute of limitations, stated:

The appellant argues that the statute was tolled for the period in which his applications for relief were pending before the Correction Board. As appellant conceded in the district court, however, the Court of Claims has rejected that theory and has held that resort to a Correction Board is a permissive (rather than a mandatory) step, which does not suspend the running of the statute. *Wilson* [*v. United States,* 231 Ct. Cl. 958 (1982) ]; *Eurell v. United States,*

566 F.2d 1146, 215 Ct.Cl. 273 (1977); *Kirby* [*v. United States,* 201 Ct.Cl. 527 (1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974) ]. Although the appellant urges us to follow contrary decisions of other circuits, under *South Corporation* [*v. United States,* 690 F.2d 1368 (Fed.Cir. 1982) ] we follow the decisions of our predecessor courts.

*Hurick v. Lehman,* 782 F.2d 984, 987 (Fed. Cir.1986); *Mathis v. United States,* 183 Ct. Cl. 145, 148 (1968) ("We held in *Kirk v. United States,* [164 Ct.Cl. 738, 742–43 (1964),] that resort to the Discharge Review Board is permissive, not mandatory, and the same is true, *a fortiori,* of the Correction Board."); *West v. United States,* 35 Fed.Cl. at 230 ("Resort to a correction board is permissive, not mandatory, in military pay cases and exhaustion of administrative remedies is therefore not required before such cases may be heard by the court.") (citations omitted); *Cook v. United States,* 32 Fed.Cl. at 786; *Wyatt v. United States,* 23 Cl.Ct. at 318; *see also Heisig v. United States,* 719 F.2d 1153, 1155 (Fed.Cir.1983) ("It is settled law that claims for military pay and allowances are actionable under the Tucker Act; although relief has usually been first sought from military correction boards since their creation in 1946, there is here no requirement of exhaustion of administrative remedies prior to pursuit of judicial review.") (footnote omitted).

In *Kirk v. United States,* the court noted that the statute of limitations is not tolled by administrative proceedings unless the pertinent statute requires a prior administrative determination as a condition precedent. *Kirk v. United States,* 164 Ct.Cl. at 742–43. The application for correction of military records by the AFBCMR is authorized by 10 U.S.C. § 1552 (1994). There is, however, nothing in these statutory provisions requiring resort to a corrections board prior to filing a complaint with this court, from which we conclude that seeking relief from the Board is permissive not mandatory. Similarly, a review of the Air Force's implementing procedures provides no indication that resort to the Board is mandatory before filing a complaint in this court. To the contrary, one provision in the rules provides that

### § 865.7 Other proceedings not stayed.

The application to the Board for correction of a record will not operate as a stay of any proceedings being taken with respect to the person involved.

32 C.F.R. § 865.7 (1989) (effective when plaintiff was discharged); 32 C.F.R. § 865.7 (1994) (effective when plaintiff applied to the AFBCMR). This broadly worded regulation could be read as applying not only to proceedings being taken by others with respect to plaintiff, but also to proceedings being initiated by the plaintiff.

The plaintiff, however, argues that:

Plaintiff could not file *before* 1 December 1995 because the agency had misplaced plaintiff's application filed 18 Jan 95, and with purpose, sent the decision of the Board to the wrong address, even after being notified of the correct address in previous correspondence to them. It appears as if the Air Force had pre-planned this sort of treachery by not forwarding the final decision to this citizen as is required by law, in an attempt to further deny this citizen his absolute rights to the protections of the U.S. Bill of Rights. This citizen did not receive the decision from the Board until February 28, 1997, and then only after threatening District Court action to force the Board to perform its Statutory Duty. Plaintiff believes that this violation of (his) rights was planned well in advance by the Judge Advocates Office and the U.S. Attorney's Office to attempt to foreclose this *pro-se* litigant's guaranteed rights. *If* the "Board" had performed its statutory duty, and *if* the "Board" had forwarded the "final decision" to the right address, timely, this would not be an issue before this Court.

(Emphasis in original.)

On May 22, 1995, the plaintiff sent the Board comments on the Board's advisory opinion and included in that letter a change of address. The AFBCMR, however, sent its denial of relief, dated November 22, 1995, to the North Carolina address the plaintiff had provided on his January 18, 1995 application to the Board. Much later, on February 12, 1997, the plaintiff sent the Board a letter with his new address, demanding a response within thirty days. The plaintiff indicates he received a copy of the Board decision on February 28, 1997. The plaintiff concludes from these facts that the Air Force intentionally mis-directed its opinion.

The plaintiff, however, must overcome the strong and broadly held presumption that in the absence of clear, contrary evidence, public officials act conscientiously in the discharge of their duties. As stated by the United States Supreme Court, "[w]e generally accord Government records and official conduct a presumption of legitimacy." *United States v. Ray*, 502 U.S. 164, 179, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991) (discussing information disclosure). *See also Dodson v. Army*, 988 F.2d 1199, 1204 (Fed.Cir.1993), *reh'g denied* ("[M]ilitary administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs.") (citation omitted); *Spezzaferro v. FAA*, 807 F.2d 169, 173 (Fed. Cir.1986) ("Unsubstantiated suspicions and allegations [of actions taken in bad faith] are not enough. The proof must be almost 'irrefragable.' ") (discussing civilian personnel matters); *Caldwell & Santmyer, Inc. v. Glickman*, 55 F.3d 1578, 1581 (Fed.Cir.1995) ("We assume the government acts in good faith when contracting.") (citations omitted).

The plaintiff essentially equates sending the Board's opinion to the plaintiff's old address with deliberate bad faith. In the absence of further support in the record, however, the plaintiff's allegations remain unfounded suspicions. Plaintiff's allegations of bad faith fail to raise factual material issues sufficient to rebut the presumption of good faith accorded to government officials. Furthermore, the plaintiff first exhibited concern with the Board's failure to take action in a letter to the Board dated February 12, 1997, more than two years after he had filed his application for relief with the Board, more than a year and a half after he had notified the Board of a change of address, and more than a year after the statute of limitations had expired on December 1, 1995. Responsibility for the failure to file a timely claim with this

**678**

court ultimately must rest with the plaintiff.

The plaintiff also states that 10 U.S.C. § 1552 provides as follows:

The function of the Board is to consider all applications properly before it to determine the existence of an error or an injustice and, when appropriate, to make recommendations to the Secretary of the Air Force. Applications *must* (emphasis supplied by plaintiff) be submitted on a DD Form 149. The term *must* in the law clearly shows that this is not an "optional remedy" but a necessary foray in order for all administrative channels to be followed before asking the appropriate Court of Law to force compliance by the (U.S.) to follow and protect the rights embodied in the U.S. Constitution.

Plaintiff's quoted language is actually not contained in 10 U.S.C. § 1552. Section 1552(a)(3) does provide that "[c]orrections under this section shall be made under procedures established by the Secretary concerned," and the implementing AFBCMR regulations provide that "[t]he application for correction should be submitted on DD Form 149, Application for Correction of Military or Naval Records under the Provisions of title 10, U.S.C., section 1552, or exact facsimile thereof, and should be addressed to: AFMPC/MPCDOA1 Randolph AFB, TX 78150." 32 C.F.R. § 865.5(a) (1994). Though this language does not appear to establish mandatory use of the DD Form 149, there is an information sheet contained in the administrative record filed in this case, titled "INFORMATION FOR USAFR MEMBERS DISCHARGED OR DISMISSED ADMINISTRATIVELY," which provides, as indicated by plaintiff, "[a]pplication must be submitted on a DD Form 149." Even if use of DD Form 149 is considered a requirement by the Air Force in order to seek relief from the AFBCMR, that is quite different from a mandatory requirement to apply to the AFBCMR before filing a complaint with this court. Mere mandatory use of a particular form for an applicant to seek AFBCMR relief provides no basis for the further conclusion that the correction board option must be exhausted before judicial remedies are invoked or that the statute of limitations which starts to run on the date of discharge can be tolled.

Plaintiff also asks for sanctions against the defendant arising out of 45–day and 30–day enlargements of time within which to respond to the plaintiff's complaint, granted by the court. Though the two motions for enlargement were filed July 22, 1997 and September 9, 1997, respectively, and were based in each case on the defendant's representation that "counsel has yet to receive a complete copy of plaintiff's military records," the plaintiff notes that the plaintiff's official records, contained in the administrative record filed in this case, were actually certified by the records custodian earlier, on June 23, 1997, and by the Administrative Assistant to the Secretary of the Air Force on July 2, 1997. Thus, plaintiff is questioning whether the records in question were actually available when defendant's counsel represented that the records were unavailable in order to support defendant's requests for enlargements of time.

Defendant explains in response that the Air Force was attempting to compile a complete record, to include the verbatim transcript of the plaintiff's administrative discharge proceeding. Upon determining that the defendant was unable to locate the transcript, defendant ultimately proceeded without it, filing plaintiff's available official military records for the administrative record. Defendant's explanation is plausible, the two extensions of time were not out of the ordinary, and there is no evidence that plaintiff was prejudiced by the extensions. The court finds no basis for sanctions against the defendant.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss is **GRANTED,** and the plaintiff's complaint is to be dismissed with prejudice.

**IT IS SO ORDERED.**